[Civ. No. 330. Fourth Appellate District.—May 5, 1932.]

FRED TUCKER, Respondent, v. AMERICAN INSURANCE COMPANY OF NEWARK, NEW JERSEY (a Corporation), Appellant.

Orrick, Palmer & Dahlquist for Appellant.

Gallaher & Jertberg for Respondent.

BARNARD, P. J.—On November 28, 1927, the defendant, through one Petersen, who was its agent with full au-. thority to issue insurance policies, issued to one Martha Arslanian a policy of fire insurance in the sum of $1,000,

covering a dwelling-house on real property owned by her. Martha Arslanian had acquired this real property shortly prior to that date from the plaintiff herein through an exchange which had been negotiated by Petersen as a real estate agent. At the time of the exchange and at the time of the issuance of the policy, the property was encumbered by a mortgage and a deed of trust, securing separate obligations. On July 2, 1928, proceedings were begun to foreclose this deed of trust by recording the required notice in the office of the county recorder of Fresno County. Early in October, proceedings were begun to foreclose the mortgage referred to, summons being served on Martha Arslanian on October 10, 1928. Subsequently Petersen negotiated a retransfer of this property from Arslanian to the plaintiff herein, the property being conveyed to the plaintiff by deed dated November 21, 1928, and recorded December 5, 1928. On December 21, 1928, the building insured under the policy was destroyed by fire. This action was brought to recover on the insurance policy referred to, and from a judgment in favor of the plaintiff the defendant has appealed.

Appellant contends that the court erred in finding that the policy in question was assigned to the respondent. It is urged that this finding is based upon an allegation in one of appellant's separate defenses, in which it was alleged that such an assignment had been made, and it is urged that this allegation may not be considered, since a similar allegation in the complaint · was denied in another defense set up by the appellant. Conceding this to be the law, we cannot agree that this finding rests entirely upon this allegation in the appellant's pleading. While it is true that no witness testified that such an assignment had been made, a number of the witnesses spoke of the matter as if an assignment had been made, and during the trial the attorney for the respondent said: "Your Honor, they have pleaded under their oaths there was an assignment made so that would seem to establish that fact." Shortly thereafter, the attorney for the appellant stated that they had also denied that fact upon lack of information and belief, whereupon the attorney for the respondent stated: "That is very well, but nevertheless it is an admitted fact in the case." To this the attorney for the

appellant replied: "I am referring, however, not to the assignment but to the consent of the insurance company to the assignment." Following that statement the trial proceeded with evidence as to the consent of the insurance company to the assignment. Counsel for the appellant practically agreed to the statement made by counsel for respondent, to the effect that the existence of this assignment was an admitted fact in the case by thus directing the inquiry to the matter of the consent of the company to such assignment, and the appellant should not now be permitted to complain upon appeal that no further evidence was put in on that subject, especially since it specifically admits, in arguing another point, that this transfer actually occurred. In addition to this, the evidence shows that the obtaining of such an assignment was left by respondent to appellant's agent, who was also the real estate agent who had handled the deal. ▪▪ This phase of the matter is interwoven with the second point raised by appellant, which is, that the court erred in finding that the appellant had consented to this assignment. In this connection it is urged that the policy itself remained in the hands of the mortgagee, that it was never delivered to Mr. Petersen, appellant's agent, that no indorsements were made upon the policy, and that nothing further appears than that the agent intended to consent to the assignment at some future time. The respondent testified that he employed Mr. Petersen to have this property retransferred to him and paid him for his services; that he knew that Petersen was the agent for the appellant; and that he knew that the policy here in question had been issued by him. He also testified that after Mr. Petersen had procured the deed he desired, he asked him to transfer the insurance to him; that Petersen told him he held the policy and that he would take care of it; and that he made no further inquiry about the matter until after the fire because in all his insurance transactions he left these matters with the agent. He further testified that Petersen told him that he had written the policy; that he himself did not then know where it was, although he later obtained it from the mortgagee after the fire; that he did not know that Petersen had not taken care of the matter until after the fire; and that he requested him when he got the deed to transfer the insurance also.

Petersen testified that the respondent requested him to see to the transfer of the insurance on the place; that he asked him to see that it was done; and that he told him he would look it right up and take care of it as best he could. He also testified that he had every intention to make the indorsement upon the policy when he knew the transfer was complete. This is most significant as he himself had handled the transaction and had already obtained the deed which completely transferred the title as far as the insured, Arslanian, was concerned. Without question, the respondent put himself in the hands of the same agent of the appellant who had issued the policy, and it seems apparent that the respondent was lulled into relying upon the fact that the transfer had been taken care of by the assurances and actions of this agent, upon whom he had a right to rely and who was in possession of more of the facts than was the respondent. We think that this evidence, with the reasonable inferences therefrom, is sufficient to support both of the findings complained of.

The next point raised relates to a purported release of this policy by the insured Arslanian, in consideration for a return of $7.50 on the premium. While this release was introduced in evidence, there is no evidence as to when or how it was secured or under what circumstances. Upon its face it purports to have been issued from the Petersen agency under date of November 28, 1928, and to have been signed by Martha Arslanian. The court found that it did not precede the assignment of the policy by Arslanian to the respondent. The deed from Arslanian to the respondent was dated November 21, 1928, while this release is dated November 28, 1928. The entire transaction was handled by the agent of the appellant who testified that he had agreed to have the insurance assigned to the respondent at or immediately after the time the property was transferred. While the evidence is most meager and unsatisfactory in relation to this release, it cannot be held that there is no evidence to support the finding complained of.

It is next urged that the court erred in finding that the defendant had notice of and consented to the commencement of the two foreclosure proceedings. While it is admitted that the evidence shows that the agent Petersen had knowledge of one of these foreclosure proceedings, it is

maintained that there is no evidence of knowledge on his part as to the other of such proceedings and also that any knowledge Petersen had in reference to these matters was obtained by him while acting as the agent of the respondent in a real estate transaction, and that this is not binding upon the appellant. It fully appears that Petersen had knowledge of this mortgage and trust deed at all times; that he issued the policy of insurance in question in the light of such knowledge; that he knew of at least one of the foreclosures and the reasonable inference from the evidence is that he knew of the other; and that he undertook to look after the assignment of this insurance under such circumstances. In the light of his promise to the respondent upon the matter of this insurance, it cannot now be held that he knew part of these facts as a real estate agent and did not know them as the agent of the appellant.

While the appellant has pleaded that it did not consent to the transfer of the policy, no evidence was introduced to this effect which has been called to our attention. There is no evidence to the effect that Petersen did not know the situation and act accordingly. The appellant relies on Petersen's testimony where he was asked if the respondent had told him that the mortgage and trust deed were both being foreclosed. He stated he was not sure that Tucker had told him this. Under further questioning he stated that he thought the respondent spoke of the second mortgage as being foreclosed; that he may or may not have spoken of the foreclosure of the other; that he knew one mortgage had been foreclosed, and that the respondent desired to protect himself by clearing up the lien of the other. He testified that the respondent "had negotiated one and in order to protect himself was going to negotiate the other". And also "that in order to clean up the entire situation he wanted him to secure a quitclaim deed from the Arslanians . . . all the encumbrances so he regain title of the property". At no time did Petersen testify that he did not know that both mortgages were being foreclosed, and while his use of the word "negotiate" is not clear, it fully appears that a short time previous to this transfer he had arranged a transfer of this property from the respondent to Arslanian, subject to both of the encumbrances, and it is a natural

inference from the fact that, in arranging this second transfer, he found it necessary to do something more with reference to the mortgage and trust deed than was done the first time, he did have such knowledge. The trial court was entitled to draw all reasonable inferences from the evidence, and we do not feel justified in holding that there is no evidence to sustain the finding complained of. There were two breaches of this same clause in the contract, and since it fully appears that the appellant waived one of them, and as all of the facts were apparently in the possession of the appellant's agent, all of the natural inferences would be in favor of the view taken by the trial court in making this finding. This view is all the more reasonable in view of Petersen's testimony that after the fire, when asked about the insurance by the respondent, he told him that his company was reputable and that he need not worry about it.

The only other point raised is that the court erred in allowing interest on the amount found due under the policy from the date of the loss, December 21, 1928. Appellant urges that under the terms of the policy the amount of the loss was not payable, in any event, until April 20, 1929, and that interest could be allowed only from that date. This is conceded by the respondent, with the stipulation that the judgment may be modified in that respect. The judgment is hereby modified by striking therefrom the words "together with interest thereon at the rate of seven per cent (7%) per annum from the 21st day of December, 1928, to date of judgment", and inserting therein, in lieu thereof, the following: "together with interest thereon at the rate of seven per cent (7%) per annum from the 20th day of April, 1929, to date of judgment".

As so modified the judgment is affirmed.

Marks, J., and Jennings, J., concurred.